UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-30035
_____

CHEVRON CHEMICAL COMPANY, ET AL.,

Defendants-Appellants,

VERSUS

OIL, CHEMICAL and ATOMIC WORKERS LOCAL UNION 4-447, ET AL.,

Plaintiffs-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____
(February 23, 1995)

Before DAVIS, BARKSDALE, and STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The central issue at hand is whether the district court should have applied the abuse of discretion standard of review to the interpretation given an ERISA plan by its administrator. Members of a local union challenged the decision by a review panel of Chevron Chemical Company's Mental Health/Substance Abuse Plan (MH/SA Plan) that the members' coverage in the plan had not terminated because they continued to participate in another medical plan "sponsored by or offered through" Chevron; but, in a *de novo* review of that decision, the district court held otherwise. We conclude that the court should have applied the abuse of discretion standard; and, applying it to the administrator's decision, we **REVERSE** and **RENDER**.

I.

In January 1989, as part of furnishing health care benefits, Chevron began covering its employees in the MH/SA Plan, and designated that plan as the primary recipient of the overall health care dollars it would contribute on behalf of its employees. In other words, for all of its employees' health care coverage, it agreed to contribute a sum certain, but with the first dollars earmarked for the MH/SA Plan.

These contributions, however, were not available immediately to all employees; contributions on behalf of union represented employees were conditioned on acceptance of the MH/SA Plan by their collective bargaining agent. In April 1990, Chevron and Oil, Chemical and Atomic Workers Local Union 4-447 (OCAW) executed a collective bargaining agreement for represented employees at Chevron's Oak Point facility in Belle Chasse, Louisiana; as a result, the OCAW members commenced being covered by the MH/SA Plan.

But shortly thereafter (June 1, 1990), some OCAW members terminated their participation in the general medical plan sponsored by Chevron, electing instead to participate in a newly negotiated, union-sponsored plan (OCAW Plan). Accordingly, Chevron commenced diverting a portion of its contributions for those employees' health care to the OCAW Plan, but continued to direct the first dollars of its contributions for them to the MH/SA Plan.

Because the OCAW Plan was sponsored by the union and provided, *inter alia*, a mental health/substance abuse rider, certain OCAW

Plan participants believed that their participation in the MH/SA Plan had terminated, and so notified Chevron. It disagreed.

In November 1990, OCAW filed a claim with the MH/SA Plan, contending that named OCAW members were entitled to the "first dollars" that Chevron had earmarked for the MH/SA Plan. This position was based on MH/SA Plan § 3(a)(i): "[i]f [a] Member participates in a health care plan sponsored by or offered through [Chevron]", his coverage under the MH/SA Plan does not terminate until the date that his coverage under the other plan also terminates.

Thus, the issue became whether the OCAW Plan was "sponsored by or offered through" Chevron. If it was, Chevron could continue to direct the "first dollars" to the MH/SA Plan; if not, the OCAW members would be entitled to those "first dollars". Chevron's assistant manager, welfare plans (Administrator), denied OCAW's claim, on the basis that under the collective bargaining agreement, OCAW had agreed to participate in the MH/SA Plan.

As a result, and maintaining that the OCAW Plan "is not a Chevron sponsored or offered plan", OCAW appealed to the review panel (Review Authority). In April 1991, the Review Authority rejected OCAW's contention, and upheld the Administrator's denial, stating in part that the OCAW Plan "is a plan sponsored by or offered through [Chevron], as evidenced by company contributions to [the OCAW Plan] on behalf of these employees. Therefore, there has been no termination of coverage under the MH/SA Plan."

Pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), OCAW and 70 of its members commenced this action, seeking, *inter alia*, to recover benefits allegedly due them, and to clarify their rights to current and future benefits under the MH/SA Plan. The parties consented to trial before a magistrate judge, who applied a *de novo* review to the Review Authority's decision.[1] Holding that, pursuant to § 3(a)(i) of the MH/SA Plan, the OCAW members' coverage had terminated because the OCAW Plan is not "sponsored by or offered through" Chevron, the court ordered retrospectively the termination of coverage and restitution of contributions that Chevron had directed to the MH/SA Plan.

## II.

Critical to this appeal is the standard of review that the district court should have applied to the plan interpretation -- *de novo* or abuse of discretion. Obviously, we must address that issue first, before turning to whether the OCAW Plan is "sponsored by or offered through" Chevron.

## A.

"On appeal, our standard of review for district court decisions reviewing plan administrators' eligibility determinations is guided by the principles that typically guide our standard of review. Namely, we review questions of law *de novo* and set aside

---

[1]    The district court stated also that "even if [its] review were done under an abuse of discretion standard, the Court perceives a conflict of interest herein which should result in favor of a heightened standard of review." *See infra*.

factual determinations only if clearly erroneous." *Sweatman v.*
*Commercial Union Ins. Co.*, 39 F.3d 594, 600 (5th Cir. 1994).
Whether the district court employed the correct standard of review
to an administrator's eligibility determination/plan interpretation
is a question of law.  Therefore, we review freely the district
court's decision to apply a *de novo*, rather than an abuse of
discretion, review.  As hereinafter discussed, we conclude that,
under the terms of the MH/SA Plan, the Administrator is given
discretion in determining OCAW's claim, and that this discretion is
vested also in the Review Authority; accordingly, the district
court should have applied the abuse of discretion standard of
review.

1.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989),
the Supreme Court held that

> a denial of benefits challenged under §
> 1132(a)(1)(B) is to be reviewed under a *de novo*
> standard unless the benefit plan gives the
> administrator or fiduciary discretionary authority
> to determine eligibility for benefits or to
> construe the terms of the plan.

*Id.* at 115.  Our court has recognized, however (as did the district
court), that the Supreme Court "surely did not suggest [in *Bruch*]
that `discretionary authority' hinges on incantation of the word
`discretion' or any other `magic word.'  Rather, the Supreme Court
directed lower courts to focus on the breadth of the
administrators' power -- their `authority to determine eligibility
for benefits or to construe the terms of the plan' ...." *Wildbur*
*v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir.) (quoting *Block v.*

*Pitney Bowes Inc.*, 952 F.2d 1450, 1453 (D.C. Cir. 1992)), *modified on other grounds*, 979 F.2d 1013 (5th Cir. 1992).  On the other hand, discretionary authority cannot be implied, *Cathey v. Dow Chem. Co. Medical Care Program*, 907 F.2d 554, 558-59 (5th Cir. 1990), *cert. denied*, 498 U.S. 1087 (1991); "an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator." *Wildbur*, 974 F.2d at 636.

When the union members began participating in the OCAW Plan in June 1990, MH/SA Plan § 10 provided as follows:[2]

> SECTION 10.  <u>ADMINISTRATION AND OPERATION OF THE PLAN</u>
>
> ....
>
> (b)  <u>Administrative Power and Responsibility</u>. The [Administrator] is the named fiduciary that has the authority to control and manage the administration and operation of the Plan.  The [Administrator] shall prescribe such forms, make such rules, regulations, interpretations and computations and shall take such other action to administer the Plan as [he] may deem appropriate. In administering the Plan, the [Administrator] shall at all times discharge [his] duties with respect to the Plan in accordance with the standards set forth in section 404(a)(1) of ERISA.

As discussed, although the MH/SA Plan does not state that the Administrator has "discretion" to make eligibility determinations or plan interpretations, this is not a *sine qua non* for an administrator to be vested with such discretion.  In addition to

---

[2]    The language of the MH/SA Plan denotes the plan's administrator as the "Organization".  Rather than using the language of the MH/SA Plan, we refer to the Organization as the "Administrator" in order to provide for a consistent use of the latter term as it is used in ERISA and related case law.

having "the authority to control and manage the administration and operation of the Plan", the Administrator is empowered to "make such rules, regulations, [and] *interpretations* ... and [to] take such other action ... as [he] may deem appropriate." (Emphasis added.) Thus, based on the MH/SA Plan's language, the Administrator has discretionary authority to make eligibility determinations and plan interpretations. *See **Salley v. E.I. DuPont de Nemours & Co.***, 966 F.2d 1011, 1014 (5th Cir. 1992) (abuse of discretion standard applied to employer's decision to terminate ERISA plan benefits when plan gives employer resposibility for the development of "procedures to implement the [plan], for interpretation of [the plan], and for coordination of administration").[3]

Because the district court reviewed the Review Authority's decision, not the Administrator's, OCAW contends that we should not focus on the authority given the Administrator, but, rather, on

---

[3]      *Compare also **Halpin v. W.W. Grainger, Inc.***, 962 F.2d 685, 688 (7th Cir. 1992) (discretionary review when the plan provides that the administrator "shall determine all questions arising in the administration, interpretation and operation of the Plan"), *and **Madden v. ITT Long Term Disability Plan for Salaried Employees***, 914 F.2d 1279, 1284 (9th Cir. 1990) (discretionary authority to determine eligibility and to construe the terms of plan where administration committee had "the exclusive right ... to interpret the Plan and to decide any and all matters arising hereunder"), *cert. denied*, 498 U.S. 1087 (1991), *and **de Nobel v. Vitro Corp.***, 885 F.2d 1180, 1186 (4th Cir. 1989) (abuse of discretion standard when administrator has the power to "determine all benefits and resolve all questions pertaining to administration, interpretation and application of Plan provisions, either by rules of general applicability or by particular decisions"), *with **Michael Reese Hosp. & Medical Ctr. v. Solo Cup Employee Health Benefit Plan***, 899 F.2d 639, 641 (7th Cir. 1990) (*de novo* review appropriate when administrator is granted only the "authority to control and manage the operation and administration of the Plan").

that given to a distinct, separate entity -- the Review Authority.

MH/SA Plan § 13 provides for appointment of the Review Authority:[4]

SECTION 13.   REVIEW PROCEDURE

(a)   Named Fiduciary.   Upon receipt of a request for review of a denied claim, the [Administrator] shall appoint a Review Authority. The Review Authority shall be the named fiduciary that has the authority to act with respect to any appeal from a denial of benefits under the Plan.

....

(e)   Review Authority Rules and Procedures. The Review Authority shall establish such rules and procedures, consistent with the Plan and with ERISA, as it may deem necessary or appropriate in carrying out its responsibilities under this Section 13.   The Review Authority may require an applicant who wishes to submit additional information in connection with an appeal from the denial of benefits in whole or in part to do so at the applicant's own expense.

In ascertaining the standard of review for the Review Authority's decision, we need not determine whether § 13 grants the Review Authority discretion over eligibility determinations.   Under ERISA, a named fiduciary (*e.g.*, the Administrator) may delegate his fiduciary responsibilities:

The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to

---

[4]   On January 4, 1991, Chevron amended, *inter alia*, MH/SA Plan § 13(a) to empower the Review Authority with "final and binding" authority relative to all eligibility questions and disputes, with the amendment retroactive to January 1, 1990.   In district court, the parties disagreed whether the MH/SA Plan, as amended, should have guided that court in determining its standard of review.   For purposes of this appeal, however, Chevron has stipulated that the original MH/SA Plan would control.   Thus, we need not address the text that should have been considered.

> designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

29 U.S.C. § 1105(c)(1). For example, in **Madden**, when confronted with a situation in which a plan's named fiduciary delegated his responsibilities to an entity which was not a named fiduciary, the Ninth Circuit, relying upon the logic of **Bruch** and § 1105(c)(1), held that the failure of the plan instrument to provide specifically that the delegate had discretion did not mandate a *de novo* review of the delegate's decision. Instead, the Ninth Circuit held that when

> (1) the ERISA plan expressly gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan and (2) pursuant to ... 29 U.S.C. § 1105(c)(1) ..., a named fiduciary properly designates another fiduciary, delegating its discretionary authority, the "arbitrary and capricious" [(abuse of discretion)] standard of review for ERISA claims brought under § 1132(a)(1)(B) applies to the [delegate] as well as to the named fiduciary.

**Madden**, 914 F.2d at 1283-84; *accord* **Rodriguez-Abreu v. Chase Manhattan Bank, N.A.**, 986 F.2d 580, 584 (1st Cir. 1993).

In the instant case, a person whose claim is denied by the Administrator may seek review of that decision. For that review, MH/SA Plan § 13(a) requires the Administrator to appoint the Review Authority, and empowers it with the "authority to act with respect to any appeal from a denial of benefits under the Plan." Thus, even if the MH/SA Plan did not provide specifically that the Review Authority was vested with discretion in acting on claims, the decision of the Review Authority, like that of the Administrator,

- 9 -

should have been subjected to an abuse of discretion review, because the MH/SA Plan provided for the appointment of the Review Authority by the Administrator.

2.

Alternatively, OCAW counters that any discretion afforded the Review Authority's decision under the abuse of discretion standard of review is limited because the MH/SA Plan and Chevron want "to preserve the flow of `first dollar' employer contributions to that plan's coffers." OCAW maintains that this creates a conflict, mandating a heightened standard of review.

Assuming *arguendo* the possibility of a conflict, "we will follow the Supreme Court's direction in **Bruch** and weigh this possible conflict as a factor in our determination of whether the [Review Authority] abused [its] discretion .... Thus, the standard of review we apply in our review of the [Review Authority's] decision is the ... abuse of discretion standard, with due consideration given to" the alleged conflict. **Duhon v. Texaco, Inc.**, 15 F.3d 1302, 1306 (5th Cir. 1994); *see* **Bruch**, 489 U.S. at 115 ("if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a `facto[r] in determining whether there is an abuse of discretion'" (quoting RESTATEMENT (SECOND) OF TRUSTS § 187 cmt. d (1959))).

In any event, OCAW fails to identify what financial benefit Chevron will gain or lose depending upon how the MH/SA Plan is interpreted. It makes the conclusory statement that we are

confronted with a situation of a "dollar out of the pocket of the company and into the pocket of an employee, is a dollar lost to the company." While this may be the situation when a conflict of interest exists, *see* **Izzarelli v. Rexene Prods. Co.**, 24 F.3d 1506, 1513 n.13 (5th Cir. 1994), OCAW has failed to demonstrate this situation is present in this case. When pressed at oral argument, OCAW summarized the conflict as competition between the MH/SA Plan and the OCAW Plan. But, this hypothetical dollar will be going to either the MH/SA Plan or the OCAW Plan, not to Chevron. OCAW has failed to identify how Chevron will gain financially should the decision of the Review Authority be upheld; no conflict is present.

## B.

The district court's application of an incorrect standard of review does not, *per se*, compel remand. As noted, had it applied the correct standard (abuse of discretion), we would still "review *de novo* the district court's holding on the question of whether the plan administrator abused its discretion ...." **Sweatman**, 39 F.3d at 601. Accordingly, we will review the Review Authority's decision under the abuse of discretion standard. And, as discussed below, pursuant to that review, we conclude that the Review Authority concluded correctly that coverage continued under the MH/SA Plan for OCAW Plan participants.

MH/SA Plan § 3(a) describes the events which terminate coverage for a Chevron employee participating in that plan. Subsection (i) provides that "[i]f the Member participates in a health care plan sponsored by or offered through [Chevron]," then

- 11 -

the termination date for coverage under the MH/SA Plan is the same as "the date that the Member's coverage under [that other] health care plan terminates."  The Review Authority concluded that, because the union members participate in the OCAW Plan, and the OCAW Plan is sponsored by or offered through Chevron, their participation in the MH/SA Plan has not terminated.  The Review Authority identified three bases for its decision: 1) Chevron contributes to the OCAW Plan on behalf of the union members; 2) as a general matter, regardless of which health care plan an employee belongs to, so long as Chevron makes contributions to that plan, employees must be covered by the MH/SA Plan; and, 3) there is, and has been, no direct employee contributions, through payroll deductions or otherwise, to the MH/SA Plan.

"Application of the abuse of discretion standard may involve a two-step process.  First, a court must determine the legally correct interpretation of the plan.  If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion."  *Wildbur*, 974 F.2d at 637; *accord*, *e.g.*, *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir.), *cert. denied*, 498 U.S. 939 (1990); *but see* *Duhon*, 15 F.3d at 1307 n.3 ("the reviewing court is not rigidly confined to this two-step analysis in every case").

For the first step -- whether an administrator's interpretation of a plan was legally correct -- we consider: 1) whether the administrator has given the plan a uniform

construction; 2) whether the administrator's interpretation is consistent with a fair reading of the plan; and, 3) whether different interpretations of the plan will result in unanticipated costs. *E.g.*, *Duhon*, 15 F.3d at 1311-12 (Johnson, J., dissenting); *Wildbur*, 974 F.2d at 637-38; *Jordan*, 900 F.2d at 56.

For this first step, although there is no basis in the record for considering the uniformity of construction given the MH/SA Plan by the administrator, nor any evidence of unanticipated costs, we may base our review on two factors: the explanation given to workers enrolling in the plan, as well as our own reading of the plan.[5] *See Jordan*, 900 F.2d at 56-58. We address each factor in turn, and conclude that the Review Authority's interpretation of the MH/SA Plan was legally correct.

First, we turn to the explanation given by Chevron, to workers enrolling in the plan, that touches on the phrase "sponsored by or offered through". There is evidence of a consistent understanding of the phrase, by Chevron, in its presentations to its workers. In its September 30, 1988, letter notifying OCAW of the implementation of the MH/SA Plan, Chevron declared that it "plan[ned] to provide a fully Company-paid Mental Health and Substance Abuse Plan to all employees and dependents of those employees who are enrolled in any medical plan *to which the Company contributes* .... The plan is separate from the Chevron Medical Plan, HMO, Blue Cross/Blue Shield or *union plan*". (Emphasis added.) This understanding was conveyed

---

[5]     Chevron attempted to introduce into evidence the costs of an interpretation, but the district court ruled the evidence irrelevant.

to all Chevron employees in an October 1988 Benefit News letter, which discussed who would be covered by the MH/SA Plan: "All employees and dependents will be automatically covered ... if they are enrolled in the Chevron Medical Plan, a participating HMO or another health care plan *to which Chevron contributes*". (Emphasis added.)

OCAW asserts that the OCAW Plan is completely independent from any company-sponsored plan, by relying upon a booklet, provided to Chevron employees, which lists various medical plans available to them. This booklet, entitled "Comparing Your Health Care Choices in 1992", was prepared by Health Benefits of America (HBA) for distribution to Chevron employees. HBA is not part of the Chevron organization; rather, it is a broker/consultant for Chevron, and is paid a commission by various health care plans in order to be listed in the booklet. The OCAW Plan was not listed in the booklet, not because of any action by Chevron or the MH/SA Plan, but because OCAW elected not to have its plan included.[6]

As explained above, our own reading of the plan is the other (second) factor for determining, based on this record, whether the Review Authority's interpretation of the plan was legally correct; whether, under MH/SA Plan § 3(a)(i), the OCAW Plan is "sponsored by or offered through [Chevron]". It is undisputed that Chevron does not "sponsor" the OCAW Plan; therefore, the sole issue is whether

---

[6]    In a letter to the provider of the OCAW Plan, OCAW stated that it did "not wish for any payment to [HBA] to be deducted from or added to [the OCAW Plan] premium, as we do not wish to avail ourselves to any services rendered by that Company."

the OCAW Plan is "offered through" Chevron.  Because Chevron provides administrative support for the OCAW Plan (through such activities as directing the payroll deductions of its employees), and contributes to the plan (as part of an employer contribution for employees' health care plans), we conclude that a fair reading of the MH/SA Plan is that the OCAW plan is "offered through" Chevron.

In sum, based upon the consistent explanation given to Chevron workers and our reading of the MH/SA Plan, we conclude that the Review Authority gave the MH/SA Plan its legally correct interpretation.  Therefore, we need not proceed to the second leg for the abuse of discretion test.  *See*, *e.g.*, ***Jordan***, 900 F.2d at 58.

### III.

For the foregoing reasons, we **REVERSE**, and **RENDER** judgment for Chevron.

**REVERSED** and **RENDERED**