Otis ALCORN, A/N/F of Juanita Revels, Meditrust Financial Services Corporation, and New Medico Associates Incorporated

v.

The STERLING CHEMICALS INCORPORATION MEDICAL BENEFITS PLAN FOR HOURLY–PAID EMPLOYEES.

No. CIV.A. G–96–441.

United States District Court, S.D. Texas, Galveston Division.

Jan. 12, 1998.

---

**10.** As quoted by Defendants in their Motion to Dismiss and/or for Summary Judgment.

Augustus Thorburn White, Chamberlain, Hrdlicka, White, Williams and Martin, Houston, TX, Brian S. King, King and Isaacaon, Salt Lake City, UT, for Meditrust Financial, Meditrust Financial Services Corporation, New Medico Associate, New Medico Associates, Inc., Otis Alcorn, Otis Alcorn, A/N/F of Juanita Revels, Plaintiffs.

Glenn A. Ballard, Jr, Bracewell & Patterson, Richard B. Sanders, Bracewell & Patterson, Houston, TX, for Sterling Chemicals, Inc. Medical Benefits Plan for Hourly–Paid Employees, Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 seeking compensation for medical treatment. Both sides have filed motions for summary judgment. For the reasons that follow, Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. Consequently, Plaintiffs' claims are **DISMISSED WITH PREJUDICE** in their entirety.

### I. FACTUAL SUMMARY

Juanita Revels suffered a severe, closed-head injury in a 1986 automobile accident. After hospitalization, it was determined that Revels needed extensive rehabilitation. Revels received this treatment from August 1988 to March 1989 at New Medico Associates, Incorporation, a rehabilitation facility located in Lindale, Texas. Until March 1989, all medical care was funded by Defendant, Sterling Chemicals, Incorporated Medical Benefits Plan for Hourly–Paid Employees (the "Plan"). Revels was discharged by the New Medico facility in March of 1989.

A year after her initial discharge (March 1990), Revels began further treatment at the New Medico facility as an outpatient. Revels continued to receive this treatment until November 1990. A month after Revels had begun treatment, New Medico submitted its first bill for this treatment to Metropolitan Life Insurance Company ("Met Life"), the Plan administrator. Met Life initially refused payment. Thereafter, however, Met Life agreed to review the claim further, but again denied the claim on November 5, 1990, seven months after it was submitted. Revels was subsequently discharged on November 20, 1995. New Medico appealed the denial of benefits, but they were denied four more times.

There are three Plaintiffs in this case. Otis Alcorn, Juanita Revels' father, brings this action as her next friend. Meditrust Financial Services Corporation, a collection agency retained to collect the compensation for the treatments, is also a Plaintiff. Alcorn has assigned his rights against Defendant to New Medico, the other Plaintiff in this case. Plaintiffs argue that the care received by Revels was covered by the Plan; therefore, they seek compensation in the amount of $155,217.25 for the treatment received by Revels from March 1990 to November 1990; Plaintiffs also seek prejudgment interest, attorneys' fees, and costs. Defendant contends that Revels' treatment was not "medically necessary" as required by the Plan. Both sides have filed summary judgment motions.

## II. STANDARD OF REVIEW

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When ruling on a motion for summary judgment, the evidence is viewed through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Generally, "a denial of benefits challenged under [ § 502(a)(1)(B) of ERISA[1]] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary *discretionary authority to determine eligibility* for benefits or to *construe the terms of the plan*." *Firestone & Tire Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)(emphasis added). If discretion is given in the Plan to either determine eligibility or construe its terms, the standard of review is the more lenient "abuse of discretion." *See id.*

■ The determination of the proper standard of review to apply in this case is the threshold question in this case. Fifth Circuit pronouncements are instructive.

> [T]he Supreme Court "surely did not suggest [in *Bruch* ] that 'discretionary authority' hinges on incantation of the word 'discretion' or any other 'magic word.' Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power—their 'authority to determine eligibility for benefits or to construe the terms of the plan'...." On the other hand, discretionary authority cannot be implied ... "an administrator has no discretion to determine eligibility or interpret the plan unless the plan language

expressly confers such authority on the administrator."

*Chevron Chemical Co. v. Oil, Chemical & Atomic Workers Local Union 4–447*, 47 F.3d 139, 142 (5th Cir.1995) (citations omitted). It is clear that discretionary authority cannot be inferred; instead, the provisions of the Plan must expressly confer such authority. *See Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 558 (5th Cir. 1990). Of course, the word "discretionary" need not be used in the Plan to warrant use of the abuse-of-discretion standard. Indeed, no "linguistic template" has been imposed. *See Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637 (5th Cir.1992). Rather, the Court should read the Plan as a whole to determine which standard to apply. *See id.*

The Fifth Circuit has held that a District Court correctly used the abuse-of-discretion standard where the pension plan conferred discretionary authority in the following manner: "[T]he administrator is empowered to 'make such rules, regulations, [and] interpretations ... and [to] take such other action ... as [he] may deem appropriate.'" *Chevron Chemical Co.*, 47 F.3d at 143 (emphasis and alterations in original) (quoting the pension plan at issue). In a similar case, the Fifth Circuit upheld the application of the more deferential abuse-of-discretion standard when the plan provided authority for the administrator "[t]o decide any question arising in the administration, interpretation, and application of this Plan." *Branson v. Greyhound Lines, Inc., Amalgamated Council Retirement and Disability Plan*, 126 F.3d 747, 756 (5th Cir.1997). Finally, in *Wildbur*, the Fifth Circuit held proper the use of the abuse-of-discretion standard when the plan at issue conferred on the administrator the "final and conclusive" determination of eligibility for benefits. *See Wildbur*, 974 F.2d at 636.

---

1. ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and "to protect contractually defined benefits," *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093 87 L.Ed.2d 96 (1985). *See generally* 29 U.S.C. § 1001 (setting forth congressional findings and declarations of policy regarding ERISA). The

parties apparently agree that the Plan at issue is an employee welfare benefit plan covered by ERISA. ERISA § 1132(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B).

Defendant correctly argues in this case that the abuse-of-discretion standard applies because the Plan grants discretionary authority to the administrator. Provisions of the Plan expressly grant this discretion. Section B(1) of the Plan defines "Covered Medical Expenses" as those *reasonable* charges incurred. Section B(1)(I) excepts from coverage any service that is experimental in terms of generally accepted medical standards. Moreover, Section B(1)(j) excepts any service not medically necessary, while Section B(1)(k) excepts those services resulting from hospital stays not precertified as medically necessary. Additionally, the Plan provides that as a condition of payment, the administrator is authorized to audit records to assure that the charges are proper. Finally, the Plan provides that the administrator shall determine the merits of a participant's appeal of a denial of benefits, and that "[t]he decision of the Plan Administrator shall be final and conclusive." From a plain reading of the entire Plan in light of relevant Fifth Circuit authority, it is clear that the administrator was conferred discretion to determine eligibility for the payment of benefits.

Even if the Plan did not confer discretion on the Plan administrator, the abuse-of-discretion standard would still apply in this case. "[F]or factual determinations under ERISA plans, the abuse-of-discretion standard of review is the appropriate standard." *Pierre v. Connecticut General Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir.1991)(noting that which "federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment."). The key determination in this case is whether the treatment received by Revels was medically necessary. Although Plaintiffs argue otherwise, whether treatment is medically necessary is clearly a question of fact. *Cf. Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th

Cir.1994)(holding that whether an incident was "accidental" was a factual determination). Therefore, rather than the *de novo* standard, the more deferential abuse-of-discretion standard applies in this case. *See Wildbur*, 974 F.2d at 637.[2]

## III. WHAT EVIDENCE CAN THE COURT CONSIDER?

At the scheduling conference for this case held on September 11, 1997, this Court declared its intention to decide the merits of this case based only on the administrative record. In their Motions, the parties agree that the general rule is that a decision of whether an abuse of discretion has occurred is based upon information known to the administrator at the time he made the decision. *See Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1015 (5th Cir.1992).[3] There is a distinction, however, between what evidence can be considered when reviewing a factual determination and the evidence considered when determining whether the administrator abused its discretion in denying benefits.

> [W]e now make manifest that a district court is not confined to the administrative record in determining whether, under our analytical framework, a plan administrator abused his discretion in making a benefit determination. This is not to say that a litigant dissatisfied with an administrator's benefit determination is free to disregard the evidence before the administrator and relitigate in court the historical facts surrounding a claim. We have long held that in conducting review under an abuse of discretion standard, a district court should evaluate the administrator's fact findings regarding the eligibility of a claimant based on the evidence before the administrator, assuming that both parties were given an opportunity to present facts to the administrator. Yet, in these and other opinions, we have also explained how other

**2.** The Court is cognizant of the Fifth Circuit's reluctance to supplant the judgment of plan administrators; however, this Court notes that the use of deferential review when a plan confers discretion on the administrator, *and* when the administrator makes factual determinations, operates adversely to "afford less protection to em-

ployees and their beneficiaries than they enjoyed before ERISA was enacted." *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956.

**3.** The parties disagree, however, about what actually constitutes the administrative record.

evidence, not dealing with the historical facts underlying the benefit determination, and therefore usually not in the administrative record, was relevant under our abuse of discretion analysis.

*Wildbur,* 974 F.2d at 639.

 As this Court understands Fifth Circuit precedent, when determining the proper interpretation of a benefits plan and whether an administrator abused its discretion in this regard, the Court focuses on that evidence before the administrator, but is *not* bound by the administrative record. Conversely, it is clear that when the Court is reviewing an administrator's *factual* determinations, such as whether treatment was medically necessary (the relevant issue in this case), the Court *is* bound by the administrative record. *See Southern Farm Bureau Life Ins. Co. v. Moore,* 993 F.2d 98, 102 (5th Cir.1993); *Mathis v. Connecticut General Life Ins. Co.,* 882 F.Supp. 92, 95 (N.D.Tex. 1994). Even when the Court is bound by the administrative record, however, that record must certainly include those depositions which reveal what information was before the administrator when benefits were denied, but only to the extent that they do so. This Court, therefore, rejects Defendant's argument that the depositions of the Plan and Met Life cannot be considered by this Court when determining whether an abuse of discretion occurred. These depositions, at least in part, indicate what information was considered by the administrator when benefits were denied. The Court, however, agrees with Defendant that no consideration should be given other deposition testimony submitted by Plaintiffs which does not reveal such information.

### IV. ANALYSIS

 Generally, application of the abuse-of-discretion standard is a two-step process. *See Wildbur,* 974 F.2d at 637. This process requires the Court to first determine the legally correct interpretation of the Plan and then examine whether the administrator applied the same. If the administrator failed to apply a legally correct interpretation of the Plan, the Court then determines whether the administrator's actions constituted an abuse of discretion. *See id.* When determining the legally correct interpretation of the Plan, the Court considers:

(1) whether the administrator has given the plan a uniform construction,

(2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan.

*Id.* at 638 (citing *Jordan v. Cameron Iron Works,* 900 F.2d 53, 56 (5th Cir.1990)).

 If the administrator has applied a legally correct interpretation of the Plan, then no further inquiry is required. *See, e.g., Chevron Chemical Co.,* 47 F.3d at 146; *Haubold v. Intermedics, Inc.,* 11 F.3d 1333, 1341 (5th Cir.1994). However, if the Court finds the administrator's interpretation legally incorrect, it must then evaluate whether that interpretation constituted an abuse of discretion. In conducting this analysis, the Court considers:

(1) the internal consistency of the plan under the administrator's interpretation,

(2) any relevant regulations formulated by the appropriate administrative agencies, and

(3) the factual background of the determination and any inferences of lack of good faith.

*Wildbur,* 974 F.2d at 638 (citing *Batchelor v. Intn'l Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund,* 877 F.2d 441, 445–48 (5th Cir.1989)). If a benefits denial is supported by substantial evidence and is not erroneous as a matter of law, it is not arbitrary or capricious, and therefore is not an abuse of discretion. *See Wildbur,* 974 F.2d at 637 n. 12.[4] Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable

---

**4.** Apparently, the abuse-of-discretion standard is the equivalent of the arbitrary or capricious standard. *See Wildbur,* 974 F.2d at 635 n. 7 (noting no substantive difference between "abuse of discretion" and "arbitrary and capricious" standards); *Salley,* 966 F.2d at 1014 ("In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously.").

mind might accept as adequate to support a conclusion.'" *Girling Health Care, Inc. v. Shalala,* 85 F.3d 211, 215 (5th Cir.1996) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted)).

■ The crux of this case is whether the treatments in question were medically necessary, and whether, in making this determination, the administrator abused its discretion. Where, as here, the case does not turn on sophisticated Plan interpretation issues, the Court is not *required* to apply the two-step process of *Wildbur* described above. *See Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1307 n .3 (5th Cir.1994)("However, the reviewing court is not rigidly confined to this two-step analysis in every case."); *Rigby v. Bayer Corp.,* 933 F.Supp. 628, 631–32 (E.D.Tex.1996)(eschewing the two-step inquiry of *Wildbur* and asking simply whether the administrator abused its discretion). In their Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment, Plaintiffs organize their arguments pursuant to the two-step process of *Wildbur* and offer evidence of what they believe to be bad faith, delay, and inconsistent Plan interpretation. Although the circumstances of this case do not require the *Wildbur* process, the Court still considers Plaintiffs' proffered evidence of bad faith, delay, and Plan interpretation when determining whether an abuse of discretion has occurred. *Cf. Lowry v. Bankers Life & Casualty Retirement Plan,* 871 F.2d 522, 525 (5th Cir.1989) (declaring that a "plan administrator's conflict of interest is certainly material to judicial review under our circuit's pre-*Bruch* arbitrary and capricious standard").[5]

■ After careful consideration, the Court concludes that Plaintiffs have failed to demonstrate a genuine issue of material fact as to whether Defendant abused its discretion when it found Revels ineligible to receive benefits. This is not a case where Defendant relied on its own opinion over the opinions of doctors who relied on objective tests to base their findings. *See, e.g., Nunez v. Louisiana Benefit Committee,* 757 F.Supp. 726, 734 (E.D.La.1991); *see also Toland v. McCarthy,* 499 F.Supp. 1183, 1194–95 (D.Mass.1980) (holding that where trustees have an obligation to take the initiative to cause reasonably available evidence to be developed and considered in the decision-making process, the failure to do so is arbitrary and capricious). Moreover, this is not a case where

---

**5.** It is clear that this case turns on whether the administrator abused its discretion when determining whether Revels' treatments were medically necessary. Even if the Court were to employ the *Wildbur* test, Plaintiffs' challenge would fail. Plaintiffs argue that Defendant denied coverage because it considered the Revels' treatments beginning in March 1990 to be "custodial," "educational," and "maintenance" in nature, and therefore, Defendant misconstrued or inconsistently applied the proper standard. Plaintiffs' argument is unpersuasive. The definition of medical necessity is consistent throughout the Plan's provisions. The Plan explicitly excludes payment for medical treatment not deemed "medically necessary in terms of generally accepted medical standards." Nowhere within the Plan are expenses for custodial, educational, or maintenance services expressly deemed medically necessary. Indeed, expenses for custodial care are expressly excluded as they relate to skilled nursing care. The Plan also states that coverage does not extend to services or confinement not medically necessary for the treatment of illness or injury. Moreover, the Plan only covers "pre-approved," medically necessary treatment in connection with nursing facilities, home health care, and hospice care. This again is consistent with the definition given medical necessity.

Moreover, although the words "custodial," "maintenance," and "educational" were used in many of the letters used to deny coverage, in *every* piece of correspondence denying coverage the Plan stated clearly that the treatment was not medically necessary. This use indicates that Defendant was uniformly using the proper standard. Therefore, regardless whether Defendant told Plaintiff that the *custodial* care was not medically necessary, or the *educational* treatment was not medically necessary, or the *maintenance* care was not medically necessary, the relevant inquiry is whether Defendant determined that the care, *regardless of what type,* was medically unnecessary. This case does not turn on semantical variations.

Additionally, Defendant persuasively argues that acceptance of Plaintiffs' desired meaning of "medically necessary" would result in unexpected and unreasonable costs. Finally, the Court finds no bad faith surrounding the claim denial. Thus, even if the Court were to employ the *Wildbur* test, the analysis does not proceed past the first prong because Defendant gave the term "medically necessary" its legally correct meaning. *See, e.g., Haubold,* 11 F.3d at 1341.

Defendant chose to follow only part of a physician's advice without independent inquiry, or without reviewing the most recent medical records. *See Salley*, 966 F.2d at 1015–16. In this case, Defendant investigated Revels' condition and analyzed all of her hospital records. Defendant conducted six separate claim reviews, and also sought and obtained the opinions of five physicians. The overwhelming majority of the medical opinions expressed support Defendants' denial of benefits. Defendant did not rely on Revels' physicians' diagnoses only to ignore their advised treatment. Rather, Defendant denied Revels' claim for benefits based on the opinions of physicians who *disagreed* with Revels' doctor. Specifically, Defendant relied upon an independent physician who found that Revels' overall performance and capacity during the time in question was unchanged, concluding that the treatment at issue was custodial in nature. *See id.* at 1015 ("The Plan administrators may rely on the treating physician's advice, or it can independently investigate the treatment's medical necessity."). Furthermore, the evidence submitted reveals that even Plaintiffs' own doctor felt that some of the treatments were not medically necessary. Clearly, there was sufficient evidence for the administrator to determine that further treatment was medically unnecessary.[6] Simply because Plaintiffs' retained physician disagreed with this determination does not change the result. *See, e.g., Birdsell v. United Parcel Service*, 94 F.3d 1130, 1133 (8th Cir.1996)(declaring that a plan administrator's decision to deny benefits is not an abuse of discretion simply because the administrator adopts one of two competing opinions); *Florida Manufactured Housing Ass'n, Inc. v. Cisneros*, 53 F.3d 1565, 1572 (11th Cir.1995) (remarking that in the context of rulemaking, "[w]hen the agency is confronted with opposing views among specialists, it must be given the discretion to rely on the reasonable opinions of its own experts, even if a court finds other views more persuasive"); *Franklin Savings Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1144 (10th Cir.1991) (observing in the context of reviewing agency action that "[c]onflicting expert opinion ... is not sufficient to allow a reviewing court to conclude the agency decision was arbitrary, capricious or an abuse of discretion"); *see also Sweatman*, 39 F.3d at 601–02 (holding that the administrative record, including medical records, evaluations of the medical records by independent medical consultants, and the results of an investigator who interviewed the plaintiff, contained ample evidence to support a finding that plaintiff was not permanently disabled); *Duhon*, 15 F.3d at 1307–09 (holding that where plaintiff was examined by his family doctor, an independent general practitioner, and an orthopedic specialist, and his records were reviewed by two company physicians, the administrator did not abuse its discretion in terminating benefits in reliance on the medical opinions stating that although plaintiff could not do his old job, he could do light sedentary work); *Southern Farm*, 993 F.2d at 103–04 (holding that a plan administrator's denial of benefits based on the factual determination about a plan participant's cause of death was supported by autopsy report and three medical records, and therefore it was a reasonable decision); *Pierre*, 932 F.2d at 1563. (holding that a plan administrator's denial of benefits based on the factual determination that the plan participant's death was not "accidental" within the terms of the policy was not an abuse of discretion because the determination was supported by the police investigation, private investigation, and conversations with the deceased's wife); *Chabert v. Provident Life & Accident Co.*, No. 94–1185, 1994 WL 374213, at * 7 (E.D.La.1994) (holding that factual determination that plaintiff was no longer totally disabled under the plan was supported by substantial evidence, including plaintiff's own doctor, an independent doctor (paid by plan), and a vocational rehabilitation exam (paid by plan)). From the evidence contained in the administrative record, the Court concludes that Defendant did not abuse its discretion when making its determination that Revels'

---

6. Plaintiff chooses to rely on the findings of Dr. Richard Radecki, who stated that the treatment fell easily within the range of generally accepted medical standards. Defendant relies on several physicians, most notably, Dr. Owen Ellington, who determined that "the care ... provided was strictly custodial and of maintenance value" and not medically necessary.

treatments were not medically necessary. Even considering the totality of the evidence submitted by Plaintiffs, which was unavailable to the administrator and which the Court is prohibited from considering in reviewing the administrator's factual determinations, the Court concludes no abuse of discretion occurred.

Because Plaintiff does not raise an issue of fact, Defendant's Motion for Summary Judgment must be **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**. Consequently, all of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

In accordance with the Court's Order Granting Summary Judgment issued on this day, all of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**THIS IS A FINAL JUDGMENT.**