United States Court of Appeals
Fifth Circuit

**F I L E D**

April 10, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 02-41127
Summary Calendar

---

RICK L GIUNTA,

Plaintiff/Appellant,

VERSUS

MOBIL CORPORATION EMPLOYEE SEVERANCE PLAN,

Defendant/Appellee.

---

Appeal from the United States District Court
For the Southern District of Texas
(01-CV-677)

---

Before DAVIS, DUHÉ, and DEMOSS, Circuit Judges.

PER CURIAM:[1]

The issue in this appeal is whether the administrator of an ERISA-governed employee welfare benefit plan correctly interpreted its terms, and if not, abused his discretion in denying benefits to the plaintiff.

Exxon Corporation and Mobil Corporation merged in 1999. The Mobil Corporation Employee Severance Plan ("the Plan"), an ERISA-

---

[1] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

governed employee welfare benefit plan, provided among other things severance packages for employees who resigned their positions for good reason during a two year period following the merger. "Good reason," as defined in Section 1.12 of the Plan, included the change of an employee's principal place of employment to a location more than 50 miles from the employee's current place of employment without the employee's "written consent."

Exxon Mobil implemented a policy whereby employees accepting post-merger positions were asked to sign a form indicating their acceptance. The form, which listed four choices and the effect of each choice with regard to the availability of Plan benefits, was referred to as the ABCD form.

Before the merger, Rick Giunta ("Giunta") worked in New Orleans, Louisiana, as an engineer for Mobil. Shortly after the merger, Giunta accepted essentially the same position with Exxon Mobil in New Orleans. In connection with this acceptance, Giunta signed the ABCD form. About one month later, Exxon Mobil offered Giunta a position in Houston, Texas. Giunta began work in Houston several months later, but did not sign the ABCD form. He did, however fill out and submit a relocation authorization form in connection with the move to Houston. He also signed and submitted claim forms for various relocation expenses, including a lump-sum payment available only to employees who relocate. From early March until mid-July, Giunta commuted to Houston to work each week and lived in corporate housing.

2

After nearly five months of working in the Houston position, Giunta left Exxon Mobil and went to work for Halliburton in Houston. Giunta's notice to Exxon Mobil of his pending departure was written in terms of declining an offer to relocate. Exxon Mobil informed Giunt that it understood his departure to be a resignation.

Giunta sought severance benefits under the Plan, claiming entitlement because he terminated his employment for "good reason," namely, relocation more than 50 miles away from his former principal place of employment without his written consent. When denied benefits, Giunta appealed, and the Plan Administrator ("Administrator") upheld the denial on appeal and on reconsideration. The Administrator's reasons included that Giunta had consented to the relocation, as evidenced by his acceptance of relocation funds, thereby eliminating "good reason" for his departure. The Plan contends that the requirement for written consent is satisfied by (1) the relocation authorization form filled in and submitted by Giunta, as well as (2) the several relocation expense reimbursement forms signed and submitted by Giunta.

On cross-motions for summary judgment, the district court granted summary judgment to the Plan and denied summary judgment to Giunta, concluding that the Administrator's interpretation of the plan was legally correct and that the denial of benefits was not an abuse of the Administrator's discretion. Giunta appeals.

I.

We review the grant of summary judgment <u>de novo</u>, applying the same standards as would the district court. <u>Shipp v. McMahon</u>, 234 F.3d 907, 911 (5th Cir. 2000). Summary judgment is appropriate if the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Judicial review of benefit determinations by the administrator of an ERISA-governed employee welfare benefit plan may involve two parts. First, we consider whether the administrator's interpretation of plan provisions is legally correct. <u>Wildbur v. ARCO Chemical Co.</u>, 974 F.2d 631, 637 (5th Cir. 1992); <u>Jordan v. Cameron Iron Works, Inc.</u>, 900 F.2d 53, 56 (5th Cir. 1990). If the administrator's interpretation is legally correct, the inquiry ends there. <u>Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local 4-447</u>, 47 F.3d 139, 146 (5th Cir. 1995). A conclusion that the administrator's interpretation is legally incorrect requires review of the administrator's determination for abuse of discretion. <u>Duhon v. Texaco, Inc.</u>, 15 F.3d 1302, 1305 (5th Cir. 1994). Obligations imposed by the plan but not required by ERISA are governed by contract law. <u>Spacek v. Maritime Ass'n</u>, 134 F.3d 283, 287 (5th Cir. 1998). In cases involving a potential conflict of interest, the conflict is a factor in the abuse of discretion inquiry. <u>Vega v. National Life Ins. Servs</u>, 188 F.3d 287, 296-97 (5th Cir. 1999).

4

In deciding whether the Administrator's determination is legally correct, we consider "(1) whether the administrator provides a uniform construction of the plan; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) whether the interpretation results in any unanticipated costs." Jordan, 900 F.2d at 56.

The Plan does not designate a specific means of providing "written consent" to relocation, and the record reveals no fact issue whether the Administrator interpreted "written consent" non-uniformly. Giunta's references to the situations of two other employees fails to advance his position to the contrary. The first, Keith Carwile, was allowed to decline after working in a new location for two months, but his situation differs in that he never executed a writing indicating his consent to relocate. The second, Stephen Pease, consented to relocation in an email and was denied benefits; thus his situation is consistent with the notion that writings other than the ABCD form can constitute written consent. In sum, these situations tend to demonstrate uniformity, rather than non-uniformity, in the Administrator's construction of "written consent."

Giunta notes the Administrator's statements that the ABCD form is "important" and that failure to procure Giunta's signature on the form in connection with his relocation might have been an "inadvertent administrative error." These statements indicate the purpose served by the ABCD form, documentation of written consent,

5

which would end the inquiry into whether Giunta provided written consent to relocate. The statements do not indicate that the Administrator interpreted "written consent" to exclude all means of consent other than the ABCD form.

Next we consider whether the Administrator provides a fair reading of "written consent." Whether the requirement of written consent is considered under ERISA or contract law, the result is the same. In the ERISA context, "Eligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language." Threadgill v. Prudential Sec. Group, Inc., 145 F.3d 286, 292 (5th Cir. 1998). Similarly, contract law in the Commonwealth of Virginia, which applies to those portions of the Plan not preempted by ERISA, requires that terms be given their "usual, ordinary, and popular meaning." D.C. McClain, Inc. v. Arlington County, 452 S.E.2d 659, 662 (Va. 1995).

The Plan does not define or limit "written consent." Only an unreasonable construction of the term would restrict it to the ABCD form or any particular form; a reasonable construction allows for any kind of writing by an employee indicating his consent to relocate. The relocation reimbursement expense forms, which include a declaration verifying that the expenses were incurred in accordance with the company's relocation policy, are well within a fair reading of "written consent" such that the employee submitting the forms can be said to have consented to the relocation in

6

writing.[2]

Finally, we consider whether the interpretation would generate unanticipated costs under the plan. As was true before the district court, the parties did not provide briefing on the issue. We nonetheless conclude, in agreement with the district court, that the broader definition applied by the Administrator will not result in unanticipated costs as compared to a restriction of the term "written consent" to the ABCD form. The broader definition excludes from eligibility employees who consent to relocation but fail to sign the ABCD form, resulting in lower costs to the Plan rather than unanticipated expenses to the Plan.

## II.

In conclusion, the Administrator's interpretation of "written consent" as including relocation expense forms is legally correct. It is undisputed that Giunta submitted forms claiming expenses reimbursable only to employees who relocate. Because the forms constitute written consent to relocate to Houston, the Administrator was correct in determining that Giunta had not terminated his employment for "good reason" and was ineligible for

---

[2] Giunta misses the mark with his insistence that there was no meeting of the minds regarding his waiver of Plan benefits. The non-availability of severance benefits was a consequence of Giunta's consent, not the object of his consent. The object of his consent was his relocation to Houston. We ask only whether the forms submitted by Giunta in connection with his move to Houston fairly fall within the term "written consent," thus rendering Giunta ineligible to claim he terminated his employment for "good reason".

7

severance benefits.  We therefore need not reach the abuse-of-discretion inquiry, <u>see Chevron</u>, 47 F.3d at 146, or Giunta's requests for damages and attorney's fees.  The judgment of the district court granting summary judgment to the Plan and denying summary judgment to Giunta is

AFFIRMED.