United States Court of Appeals,

Fifth Circuit.

No. 91–3523.

Jack R. SALLEY, Individually and on Behalf of his Minor Daughter, Danielle SALLEY, et al., Plaintiffs–Appellees, Cross–Appellants.

v.

E.I. DuPONT de NEMOURS & CO., et al., Defendants–Appellants, Cross–Appellees.

July 27, 1992.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before WILLIAMS, JOLLY, and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Danielle Salley was a psychiatric patient at DePaul Hospital. DuPont paid for her treatment under an ERISA plan it had established. DuPont concluded that Danielle's treatment was no longer medically necessary and terminated the benefits. Salley and her father brought suit to recover the costs of Danielle's hospitalization. The district court ruled in their favor. DuPont appeals the decision, claiming the district court erred both in holding that the plan administrators abused their discretion and in applying the treating physician rule. DuPont also appeals the court's decision to award attorney's fees, and the Salleys contest the court's calculation of the fees. We affirm the district court's ruling.

I. FACTS

DuPont established its Hospital Medical–Surgical Coverage Policy (the "Plan") in accordance with the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). At all relevant times, Connecticut General administered the Plan, and DuPont reimbursed Connecticut General the full costs of medical claims. DuPont also contracted with Preferred Health Care ("Preferred") to manage the individual cases.

Danielle Salley is a fifteen-year-old girl with a history of emotional disabilities, drug abuse,

and depression. Her father, Jack Salley, is a retired DuPont employee and continues to participate in the Plan under which Danielle is covered as his dependent. Danielle has been an in-patient three times at DePaul Northshore Hospital in Covington, Louisiana. Each time, she has been under the care of Dr. Gordon Blundell, a psychiatrist in charge of the hospital's adolescent unit. The present litigation concerns DuPont's termination of benefits during the third admission in the hospital.

During her first two visits, Danielle was an extremely troubled child. She displayed suicidal tendencies, attempted to escape, and experienced episodes of head-banging. She, however, improved during each visit, but as soon as she was released, she "recompensated"—i.e. reverted back to her previous behavior. Dr. Blundell thus determined that Danielle could not live with her parents and attend public schools.

Dr. Blundell was concerned about Danielle's continual admissions and releases from the hospital, a problem he referred to as her "revolving door admissions." In an attempt to eliminate the revolving door admissions, Dr. Blundell worked with Plan administrators to "flex" the benefits. A "benefits flex" is a health insurance industry practice in which the parties amend or modify the policy's coverage benefits in order to accommodate a contingency that the original contract did not address specifically. Although the policy does not in terms permit the treatment provided, the treatment is mutually beneficial because the insured receives the coverage desired while the insurer reduces its payout expense through less expensive treatment.

Beginning in Danielle's second admission at DePaul Hospital, the Salleys and hospital employees attempted to locate a less restrictive treatment for Danielle, including several boarding schools. They, however, were unable to find a facility capable to meet Danielle's particular needs. Unable to find such a facility, the hospital released Danielle to attend public school. She subsequently recompensated.

On September 10, 1990, Danielle was readmitted to DePaul Hospital. As the hospital's records evidence, she quickly restabilized. In fact, Dr. Blundell wrote in his October 5, 1990 Progress Notes that Danielle was beginning "to function at the highest level she ever has in life."

On September 28, 1990, Dr. Blundell conversed on the telephone with Ron Schlegel, a Preferred case manager, regarding Danielle's condition. Schlegel was knowledgeable about Danielle's case because he had been involved with it since her first admission. Dr. Blundell apprised Schlegel of Danielle's dramatic improvement but also informed Schlegel that although Danielle was currently stable, he did not think he could release her because she would quickly regress. Schlegel advised Dr. Blundell that Dr. Satwant Ahluwalia, in accordance with Preferred procedures, would review the case to determine medical necessity. The Plan pays only for expenses that are "medically necessary," although the Plan never defines the phrase.

Dr. Ahluwalia, a psychiatrist and regional director at Preferred, also had been involved with the case since Danielle's first admission. She, however, never had examined Danielle nor reviewed the medical records from the second or third admission. She had reviewed the records from Danielle's first admission.

Dr. Blundell and Dr. Ahluwalia discussed Danielle's treatment on the telephone on October 2, 1990. Dr. Blundell told Dr. Ahluwalia that Danielle was stabilizing and would be able to leave the hospital soon, but he did not want to repeat the revolving door of admissions. Dr. Ahluwalia instructed Dr. Blundell that DuPont would terminate the benefits for in-patient hospitalization on October 11, 1990. She testified at trial that she knew Dr. Blundell did not agree with this date for release.

The Salleys brought suit challenging DuPont's termination of benefits from October 11, 1990

through January 25, 1991.[1]  Dr. Blundell discharged Danielle on January 25, 1991.  She has since enrolled in the Darrow School in New York.

The district court concluded that DuPont abused its discretion when it terminated benefits for Danielle's in-patient hospitalization.  Consequently, the court found DuPont liable for Danielle's hospital bills from October 11, 1990 through January 25, 1991.  Moreover, the court awarded discretionary attorney's fees under 29 U.S.C. § 1132(g) and required each party to pay its own costs.  DuPont appeals the district court's ruling.

## II. STANDARD OF REVIEW

We first address the standard of review we employ in evaluating DuPont's decision to terminate benefits under the terms of the ERISA benefit plan.  The Supreme Court holds that the denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).  If the plan gives the administrator or fiduciary discretionary authority, then we apply an abuse of discretion standard.  *Id.*  In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously. *Penn v. Howe–Baker Eng'rs, Inc.,* 898 F.2d 1096, 1100 n. 2A (5th Cir.1990).

The Policy states "The [DuPont] Employee Relations Department shall be responsible for development of procedures to implement the policy, for interpretation of policy, and for coordination of administration."  Similar language has led this Court to apply the abuse of discretion standard. *See, Lowry v. Bankers Life and Casualty Retirement Plan,* 871 F.2d 522, 524 (5th Cir.), *cert. denied,* 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989) (granting the Plan Committee the power to

---

[1]In accordance with an agreement between the parties, DuPont paid Danielle's hospitalization expenses through November 20, 1990, although DuPont challenges whether the Plan required it to make the payments.

"interpret and construe" the plan was sufficient to apply the abuse of discretion standard); *Batchelor v. Int'l Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund,* 877 F.2d 441, 443 (5th Cir.1989) (the following language gave the administrator discretion: the Trustees "have full and exclusive authority to determine all questions of coverage and eligibility.... They ... have full power to construe the provisions of this Agreement, [and] the terms used herein").

The Salleys assert two reasons why we should not apply the abuse of discretion standard. First, DuPont contracted with Preferred Health Care for medical necessity reviews. DuPont, therefore, was not exercising its discretion as the Plan envisioned. We disagree. The contract between DuPont and Preferred explicitly states, "DUPONT reserves final authority to authorize or deny payment for services to beneficiaries of a Plan." Moreover, counsel for DuPont stated that DuPont exercised final authority in the case at hand. As long as a company maintains the ultimate decision on denial of benefits, it can be beneficial for it to have experienced agents assist in the determination.

DuPont's conflict of interest also concerns the Salleys. DuPont funds the Plan from current operating revenues, giving it an apparent incentive to deny benefits. The alleged conflict, however, does not change the standard of review. "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "factor[ ] in determining whether there is an abuse of discretion.' " *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956 (citation omitted); *see also, Lowry,* 871 F.2d at 525, n. 6 ("There may be in effect a sliding scale of judicial review of trustees' decisions ...—more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is ...") (citation omitted). Accordingly, we apply an abuse of discretion standard to DuPont's benefits termination decision.

## III. ABUSE OF DISCRETION

Analyzing the record before us, we conclude the district court correctly ruled that DuPont

abused its discretion when it terminated benefits for Danielle's in-patient hospitalization. DuPont argues that this Court's decision whether the Plan administrator abused his discretion must be based upon the facts known to the administrator at the time the decision was made. *Denton v. First Nat'l Bank of Waco, Texas,* 765 F.2d 1295, 1304 (5th Cir.1985). Although we generally decide abuse of discretion based upon the information known to the administrator at the time he made the decision, the administrator can abuse his discretion if he fails to obtain the necessary information. In the present case, neither Schlegel nor Dr. Ahluwalia ever examined Danielle, nor had either one obtained the records from the second or third admissions to DePaul Hospital.

The Plan administrators may rely on the treating physician's advice, or it can independently investigate the treatment's medical necessity.[2] In the present case, the Plan administrators apparently relied on Dr. Blundell's description that Danielle was no longer suicidal or out of control. The administrators, however, cannot rely on part of Dr. Blundell's advice and ignore his other advice. Dr. Blundell also warned Dr. Ahluwalia that he could release Danielle only if there was an "iron-clad plan in hand that would assure her structure, safety, and well being." Such a plan had not been found.

The hospital records from the third admission would have demonstrated to the administrators the medical necessity of Danielle's in-patient hospitalization. Danielle was stable when she was in the hospital, but as soon as she was released into her former environment, she began to deteriorate. The doctors who examined Danielle and carefully evaluated her case were confident release into the improper environment would lead to recompensation.

DuPont maintains that options other than just hospitalization or release to her former

---

[2]We note that when we refer to the Plan administrators, we necessarily must refer to Schlegel and Dr. Ahluwalia because DuPont presented no evidence regarding its decision to terminate benefits. We are told that DuPont made the final determination as to continuation or determination of benefits, but no one explained what DuPont did with the information provided by Schlegel and Dr. Ahluwalia other than to terminate benefits. We do not even know who at DuPont made the ultimate decision. If there is any support at all in the record for the DuPont decision, it must be found entirely in the recommendations of Schlegel and Dr. Ahluwalia.

environment existed. It suggests, for example, that a residential care treatment would have satisfied Danielle's needs. In reality, hospitalization and release to her former environment were the only options available at the time in question. Dr. Blundell agreed a less restrictive environment could be beneficial to Danielle, but he felt releasing Danielle was inappropriate until a proper program and environment was found. Such a program had not been discovered at the time in question. Therefore, if Dr. Blundell had released Danielle, of necessity she would have returned to her former environment.

Both the Salleys and the hospital spent significant time trying to find a less restrictive environment for Danielle. The evidence indicates they acted in good faith and without any unnecessary delay. In fact, the Salleys eventually found an appropriate environment for Danielle at Darrow School, where she enrolled in January 1991.

We further note that the issue of a less restrictive environment has nothing to do with money. One of the issues the district court addressed was whether DuPont would pay for the alternative treatment. The district court held DuPont did not have to pay for the costs of Darrow School, and the Salleys have not appealed this issue. Whether DuPont would pay for the alternative treatment, however, is irrelevant. If the requisite facility had been found, then hospitalization would not have been medically necessary. On the other hand, until the facility was found, hospitalization was medically necessary.

We hold that although DuPont followed the prescribed procedures, it abused its discretion in relying upon the Schlegel and Dr. Ahluwalia recommendation to terminate Danielle's benefits. Because they chose to follow Dr. Blundell's diagnosis, Schlegel and Dr. Ahluwalia were required, absent independent inquiry, to follow all his advice, not just part of it. If they decided to deviate from his diagnosis, they were required to investigate further the medical necessity of in-patient hospitalization. Whether this investigation included an examination of Danielle or an analysis of hospital records depended on the particulars of each case. At the very least, however, administrators

relying on hospital records obviously must review the most recent records. The case administrator and the physician conceded at trial that they did not do so.

## IV. THE TREATING PHYSICIAN RULE

During the trial, the judge stated, "I am certainly going to give deference to the treating physician." Moreover, the court's opinion stated, "In light of Dr. Blundell's testimony in this matter, and the deference to be shown him as the patient's treating physician, the Court concludes that the continued inpatient psychiatric hospitalization ... was "medically necessary'..." DuPont maintains that applying the "treating physician rule" is improper in ERISA cases.

The "treating physician rule" requires the court, in appropriate circumstances, to defer to a patient's treating physician's testimony unless substantial evidence contradicts the testimony. *Jones v. Sullivan,* 949 F.2d 57, 59 (2nd Cir.1991). We have recognized the use of the rule in cases involving termination of social security benefits. *Babineaux v. Heckler,* 743 F.2d 1065, 1068 (5th Cir.1984); *Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987). Courts have also applied the rule in suits brought under the Federal Tort Claims Act. *Curtis v. Shivers,* 674 F.Supp. 1237, 1240 (E.D.La.1987). But we declined to apply the rule when a handicapped child's treating physician testified regarding the appropriate education for the child. *Christopher M. v. Corpus Christi Indep. School Dist.,* 933 F.2d 1285, 1292 (5th Cir.1991).

This Court has not addressed the propriety of the "treating physician rule" in ERISA cases. We have considerable doubt about holding the rule applicable in ERISA cases. Under it, the treating physician would stand to profit greatly if the court were to find benefits should not be terminated. There is a clear and strong conflict of interest, and we are doubtful that a court should defer automatically to his or her testimony. *See, Jett v. Blue Cross and Blue Shield of Alabama, Inc.,* 890 F.2d 1137, 1140 (11th Cir.1989).

The district court did apply the "treating physician rule."  But even assuming this was error, the error was harmless.  Although the court announced it was applying the "treating physician rule," it later stated in its opinion that "of all the witnesses heard, the one most interested in the welfare of this patient, and not in the insurer's pocketbook, was the treating physician."  Assuming it is error to grant a presumption in favor of the treating physician in an ERISA case, the district court nevertheless may properly assess each case's individual circumstances and evaluate the witnesses' credibility.  If a court believes the treating physician is more credible than other witnesses, it is entitled to give greater weight to his or her testimony.  The record here is clear that the court made the decision as to credibility and properly relied heavily upon the testimony of the treating physician.

## V. ATTORNEY'S FEES AND COSTS

The district court awarded the Salleys attorney's fees but decreased the amount awarded by $3000 as a sanction for their attorney's pattern of abuse of process.  The district court further required each side to bear its own costs.  DuPont challenges the granting of attorney's fees, and the Salleys appeal the sanction and the requirement that they bear their own costs.

Under ERISA, the district court has the discretion to award attorney's fees to either party. 29 U.S.C. § 1132(g)(1).  Such an award is purely discretionary, and we review the district court's decision only for an abuse of discretion. *Donovan v. Cunningham,* 716 F.2d 1455, 1475 (5th Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984).  "In deciding whether to award attorneys' fees to a party under section 502(g), therefore, a court should consider such factors as the following:  (1) the degree of the opposing parties' culpability or bad faith;  (2) the ability of the opposing parties to satisfy an award of attorneys' fees;  (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;  (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself;  and (5) the relative merits of the parties' position." *Iron Workers Local No. 272 v. Bowen,* 624 F.2d

1255, 1266 (5th Cir.1980), *appeal after remand,* 695 F.2d 531 (11th Cir.1983).

The district court based its finding upon the unreasonableness of DuPont's termination of the benefits. The court analyzed the Salleys' counsel's time sheets and concluded that he spent 72.45 hours on the matters actually at issue in the case. The court then determined $110 was a reasonable rate for such services. We find support for the decision of the district court in the record. We hold that the district court did not abuse its discretion when it awarded attorney's fees.

The district court decreased the fees by $3,000 for sanctionable abuse of process.[3] In accordance with Fed.R.Civ.P. 11, a district court can sanction an attorney for filing papers in the court for improper purposes. We review the district court's Rule 11 decision under the abuse of discretion standard. *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 872 (5th Cir.1988) (en banc). The district court not only enumerated the counsel's specific abuses in its opinion but also admonished counsel throughout trial for his improper tactics. We hold the sanction valid. The district court did not abuse its discretion.

Finally, the district court held that each side would bear its own costs. We recognize a strong presumption that the court will award costs to the prevailing party. *Sheets v. Yamaha Motors Corp., U.S.A.,* 891 F.2d 533, 539 (5th Cir.1990). Nevertheless, Fed.R.Civ.P. 54(d) permits the court to exercise its discretion and withhold an award of costs to the prevailing party. We review for abuse of discretion, but if the court does not award costs to the prevailing party, we require the district court to state its reasons. *Hall v. State Farm Fire & Casualty Co.,* 937 F.2d 210, 216–217 (5th

---

[3]The court stated: "Some examples of such abuse of process on plaintiffs' counsel's part, which run far afield of characterization as "overzealous representation,' include but are not limited to the following: (1) Inappropriately engaging the jurisdiction of a state court for issuance of an *ex parte* Temporary Restraining Order; (2) Meritless attempts to remand the action once properly removed to the federal court; and (3) Abuse of the motion procedure by filing numerous memoranda riddled with unduly repetitive narrative providing virtually no assistance to the Court and having no bearing on the issues before the Court.... These and other actions caused defendants to unnecessarily expend *considerable* time and resources." (emphasis in original).

Cir.1991). The court cannot require the prevailing party to share costs unless the costs serve as a sanction. *Id.* at 216.

In the present case, the court held that the counsel's improper conduct throughout the trial warranted requiring the Salleys to pay their costs. The court, thus, did support its conclusion that the prevailing party pay its own costs, the costs serving as a sanction. The court satisfied the requirements of the law and did not abuse its discretion.

## VI. CONCLUSION

We find no reversible error, and we affirm the district court's holding. The court applied the correct standard of review, and the evidence supports its ruling that DuPont abused its discretion when it terminated Danielle's benefits. Even assuming that the court erred in applying the treating physician rule, the error was harmless because the court held specifically that the treating physician was the most credible witness. Finally, the district court did not abuse its discretion in its rulings regarding attorney's fees and costs.

AFFIRMED.