Annette DEW, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**No. Civ.A. H–98–4136.**

United States District Court,
S.D. Texas,
Houston Division.

Sept. 17, 1999.

Jane M. McLaughlin, Broussard McLaughlin and Segura, Houston, TX, Scott M. Broussard, Houston, TX, for Annette Dew, plaintiff.

Clayton Edward Bailey, Wolin Ridley, Dallas, TX, for Metropolitan Life Insurance Company, defendant.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Plaintiff Annette Dew filed this lawsuit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Metropolitan Life Insurance Company ("Met Life") improperly denied her claim for long-term disability benefits under Dew's employer's group plan (the "Plan"). The case is now before the Court on Met Life's Motion for Summary Judgment ("Motion") [Doc. # 10].[1] The Motion has been fully briefed by both parties.[2] Based on the Court's review of the parties' briefing, the administrative record, and the applicable legal principles, the Court **grants** Met Life's Motion.

### I. *FACTUAL AND ADMINISTRATIVE BACKGROUND*

. Dew was employed by John Brown E & C as an administrative assistant. In connection with her employment with John Brown E & C, Dew collected and compiled data for records and reports, prepared general correspondence, and handled routine filing. The administrative assistant position is primarily sedentary, involves no heavy lifting, and requires good interpersonal relationships.

As an employee of John Brown E & C, Dew was covered under the employer's group long-term disability plan. Dew submitted to Met Life a claim for long-term disability benefits, asserting that she was totally disabled as the result of chronic fatigue syndrome.[3] By letter dated February 5, 1997, Met Life denied Dew's

---

1. Also pending is Met Life's Motion to Strike Plaintiff's Reply to Defendant's Reply [Doc. # 22]. Although Plaintiff's Reply [Doc. # 21] was filed without leave of court and is superfluous, the Court declines to strike the brief.

2. In her response to Met Life's Motion ("Response") [Doc. # 16], Dew relied primarily on the Fifth Circuit panel decision in *Vega v. National Life Insurance Services, Inc.*, 145 F.3d 673 (5th Cir.1998). The Fifth Circuit, however, had granted rehearing *en banc* in the *Vega* case. *Vega*, 167 F.3d 197 (5th Cir. 1999). As a result, the Court stayed consideration of Met Life's Motion until the Fifth Circuit's *en banc* decision in *Vega* was released and the parties filed supplemental briefing. The *en banc* decision was issued September 1, 1999. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 1999 WL 680319 (5th Cir. Sept.1, 1999). Supplemental briefs were filed September 8, 1999, by Dew [Doc. # 25] and by Met Life [Doc. # 24].

3. "Totally disabled" is defined under the Plan to mean that due to an Injury or Sickness, [an employee]:

> 1. [is] completely and continuously unable to perform each of the material duties of [his] regular job; and
> 2. require[s] the regular care and attendance of a Doctor.
> However, after the first 24 months of benefit payments, [the employee] must also be completely and continuously unable to perform the duties of any gainful work or service for which [the employee is] reasonably qualified taking into consideration [his] training, education, experience and past earnings.
> [The employee] will also be considered Totally Disabled when, due to an Injury or Sickness, [he] suffer[s] a 50% loss of earnings capacity and [he] require[s] the regular care and attendance of a Doctor.

Summary Plan Description, Exh. 1 to Motion, at 5.

claim. February 5 Letter, Exh. 12 to Motion. Dew requested reconsideration of the denial and, after again reviewing the administrative record as it existed at that time, Met Life maintained its decision that Dew was not entitled to long-term disability benefits under the Plan.

Dew again "appealed" Met Life's decision. Met Life obtained a second independent medical review of Dew's file, which supported Met Life's prior decision to deny Dew's claim. Met Life continues to deny Dew's claim.

## II. *STANDARD OF REVIEW*

■ The United States Supreme Court has held that the denial of benefits under an ERISA plan is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). *See also Vega v. National Life Insurance Services*, Inc., 188 F.3d 287, 295 (5th Cir.1999); *Meditrust Financial Services Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir.1999). If the plan grants to the administrator such discretionary authority, the reviewing court applies an "abuse of discretion" standard. *Id.*

■ "In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously." *Meditrust*, 168 F.3d at 214 (internal quotations and citations omitted). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (internal quotations and citations omitted). If the administra-

tor's decision is supported by substantial evidence in the administrative record and is not erroneous as a matter of law, the administrator has not abused his discretion. *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 646 n. 12 (5th Cir.1992).

■ The Fifth Circuit applies a "sliding scale" approach to denials made by an administrator that is also the insurer. *Vega*, 188 F.3d 287, 295. Under this "sliding scale" approach, the "court always applies an abuse of discretion standard, but gives less deference to the administrator in proportion to the administrator's apparent conflict." *Id.* at 296. "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Id.* at 297. The Court reviews the merits of the administrator's decision to "determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." *Id.* at 296.

■ The Fifth Circuit does not impose a duty on the administrator to "conduct a good faith, reasonable investigation." *Id.* at 297. Instead, the reviewing court must focus on whether the administrative "record adequately supports the administrator's decision." *Id.* at 298. "The administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Id.* at 300. This Court, in reviewing the administrator's decision, may not stray beyond the administrative record except for certain, very limited, situations.[4] *Id.* at 299. This approach serves the dual purpose of (1) preventing the district court from engaging in additional fact-finding; and (2) encouraging both parties to present to the administrator the evidence that best supports their case and to resolve the dispute at the administrative level. *Id.* at 298–99.

4. The only exceptions recognized by the Fifth Circuit are (1) evidence of how the administrator interpreted the plan in other instances, and (2) evidence that assists the court in understanding medical terminology or procedure. *Vega,* 188 F.3d 287, 299.

## III. *ANALYSIS*

### A. *Appropriate Standard of Review in this Case*

The Plan in this case expressly grants to the administrators "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." Plan, Exh. 1 to Motion, at 12. Because the Plan clearly and unequivocally gives the administrators discretionary authority to construe the terms of the plan, the administrators' decisions are reviewed under the "abuse of discretion" standard. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948; *Vega,* 188 F.3d 287, 295; *Meditrust,* 168 F.3d at 213.

Met Life is both the insurer and the administrator for the Plan. As a result, the "sliding scale" approach applies and, although the Court applies the abuse of discretion standard of review, the Court gives the administrator's decision less deference in proportion to the level of conflict. *Vega,* 188 F.3d 287, 296.

In this case, Dew's only evidence of a conflict is Met Life's position as both insurer and administrator.[5] Although this evidence is sufficient to demonstrate a conflict, the evidence does not support a degree of conflict other than minimal. As a result, applying the "sliding scale" approach, the administrator's decision is reviewed "with only a modicum less deference" than would otherwise apply. *See, id.* at 300.

### B. *Review of Administrator's Decision*

■ The administrative record in this case contains sufficient evidence to support the administrator's decision. Met Life requested medical records from Dew's physicians, Dr. Luis Fraga and Dr. Patricia Salvato. Dr. Fraga declined to respond and, instead, wrote at the top of the questionnaire that the patient had been referred to Dr. Salvato. Fraga Response to Questionnaire, Exh. 4 to Motion. Dr. Salvato completed the medical questionnaire and wrote a letter to Met Life.

Met Life obtained an independent medical review of Dew's records by Dr. Robert Petrie, who determined that the chronic fatigue syndrome diagnosis was not supported by the medical evidence in the record.[6] Dr. Petrie's report supported the denial of Dew's claim for long-term disability benefits. Petrie Report, Exh. 8 to Motion.

When presented with Dr. Petrie's report and given the opportunity to respond to Dr. Petrie's concerns that the medical records did not support the diagnosis, Dr. Salvato wrote a conclusory letter restating the original diagnosis. December 16 Letter, Exh. 10 to Motion. Dr. Salvato did not provide any additional medical records.[7] Met Life submitted Dr. Salvato's

---

5. Dew also argues, as evidence of Met Life's conflict, that Met Life "took no action on her appeal other to search for an administrative reason to deny Ms. Dew's claim." Dew's Supplemental Brief, at 3. Initially, the administrative record indicates that Dew requested reconsideration of Met Life's decision to deny her claim by handwritten letter dated March 20, 1997. March 20 Letter, Exh. 13 to Motion. Dew did not present additional evidence for Met Life to consider. Instead, Dew simply stated that she disagreed with Met Life's decision and asked Met Life to reconsider. The administrative record also establishes that, after a second "appeal" from Met Life's decision, Met Life obtained an additional independent medical review of Dew's file. The administrative record is inconsistent with Dew's argument that Met Life "took no action

on her appeal" and that its failure to do so is evidence that Met Life was operating under a "serious conflict of interest."

6. Chronic fatigue syndrome is a diagnosis of exclusion. Dr. Petrie determined that the medical records did not indicate that other possible diagnoses had been properly excluded as required for a diagnosis of chronic fatigue syndrome.

7. It appears that Dew, Dr. Salvato, or some other person providing counsel to Dew, decided to "dismiss[ ] the administrative process as a nuisance and place[ ] all their eggs in the litigation basket." *Cf. Vega,* 188 F.3d 287, 298. Rather than provide sufficient medical records and accompanying explanations which might support her diagnosis of Dew's

response to Dr. Petrie, who issued a second report. Supplemental Report, Exh. 11 to Motion. Dr. Petrie again noted that Dew had been able to continue with gainful employment for many years after she was diagnosed with chronic fatigue syndrome.

After Dew's claim was denied and Dew appealed that decision, Met Life obtained a second independent medical review by Dr. James Jones. Dr. Jones reported to Met Life that the medical records did not support the chronic fatigue syndrome diagnosis. Jones Report, Exh. 16 to Motion. This report is additional evidence in the administrative record which supports Met Life's decision to deny Dew's claim for long-term disability benefits.

Met Life's decision is supported by substantial evidence in the administrative record. Met Life did not abuse its discretion by denying Dew's claim. The Court **grants** Met Life's Motion for Summary Judgment.

## IV. *CONCLUSION AND ORDER*

The Court reviewed Met Life's decision under an abuse of discretion standard, giving only slightly less deference than would be given to a conflict-free administrator's decision. The administrative record, beyond which the Court may not stray, contains substantial evidence to support Met Life's decision to deny Dew's claim for long-term disability benefits under the Plan.

Based on the foregoing, it is hereby

**ORDERED** that Met Life's Motion to Strike the Affidavit of Dr. Salvato [Doc. # 20] is **GRANTED;** Met Life's Motion to Strike Plaintiff's Reply [Doc. # 22] is **DENIED;** and Met Life's Motion for Summary Judgment [Doc. # 10] is **GRANTED.**

chronic fatigue syndrome, Dr. Salvato wrote conclusory letters during the administrative process and waited until this lawsuit was filed to provide a comprehensive affidavit to support her diagnosis. The matters set forth in the affidavit should have been presented to Met Life during the administrative process in a manner which would have given Met Life

The Court will issue a separate final judgment.

the opportunity to review the evidence and consider it in making its decision. Having failed to do so, Dew cannot supplement the administrative record during this lawsuit. *See, Vega,* 188 F.3d 287, 299. The Court **grants** Met Life's Motion to Strike the Affidavit of Dr. Salvato [Doc. # 20].